## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GIO PIZZERIA & BAR HOSPITALITY, LLC and GIO PIZZERIA BOCA, LLC, individually and on behalf of all others similarly situated,<br><br>                Plaintiffs,<br><br>    v.<br><br>CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO POLICY NUMBERS ARP-74910-20 and ARP-75209-20,<br><br>                Defendants. | Civil Action No. _____<br><br><br>**JURY TRIAL DEMANDED** |

### CLASS ACTION COMPLAINT

Plaintiffs GIO Pizzeria & Bar Hospitality, LLC and GIO Pizzeria Boca, LLC (together, "GIO"), individually and on behalf of the other members of the below-defined nationwide Plaintiffs' classes (collectively, the "Insured Class"), bring this class action against Defendants Certain Underwriters at Lloyd's, London Subscribing to Policy Numbers ARP-74910-20 and ARP-75209-20 ("Underwriters"), and in support thereof state the following:

### I.    NATURE OF THE ACTION

1.    Plaintiffs GIO own and operate Nick's New Haven Style Pizzeria & Bar ("Nick's Pizzerias"), full-service bar and restaurants, specializing in coal-fired pizza, with locations in Coral Springs, Florida and Boca Raton, Florida. Nick's Pizzerias' futures are now threatened by COVID-19 (a.k.a. the "coronavirus" or "SARS-CoV-2").

2.    To protect their businesses in the event that they suddenly had to suspend operations for reasons outside of its control, or in order to prevent further property damage, Plaintiffs

purchased insurance coverage from Underwriters, including special property coverage, as set forth in Underwriters' Business Income (and Extra Expense) Coverage Form ("Special Property Coverage Form").

3.     Underwriters' Special Property Coverage Form provides "Business Income" coverage, which promises to pay for loss due to the necessary suspension of operations following physical loss or damage to property.

4.     Underwriters' Special Property Coverage Form also provides "Civil Authority" coverage, which promises to pay for loss caused by the action of a civil authority that prohibits access to the insured premises.

5.     Underwriters' Special Property Coverage Form also provides "Extra Expense" coverage, which promises to pay the expense incurred to minimize the suspension of business and to continue operations.

6.     Underwriters' Special Property Coverage Form, under a section entitled "Duties in the Event of Loss" mandates that Underwriter's insured "must see that the following are done in the event of loss". . . [t]ake all reasonable steps to protect the Covered Property from further damage and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim."

7.     Unlike many policies that provide Business Income (also referred to as "business interruption") coverage, Underwriters' Special Property Coverage Form does not include, and is not subject to, any exclusion for losses caused by viruses or communicable diseases.

8.     Plaintiffs GIO were forced to suspend or reduce business at their Nick's Pizzerias due to COVID-19 and the resultant orders issued by civil authorities in Florida mandating the suspension of business for on-site services, as well as in order to take necessary steps to prevent further damage and minimize the suspension of business and continue operations.

2

9.      Upon information and belief, Underwriters have, on a widescale and uniform basis, refused to pay its insureds under its Business Income, Civil Authority, Extra Expense, and Sue and Labor coverages for losses suffered due to COVID-19, any executive orders by civil authorities that have required the necessary suspension of business, and any efforts to prevent further property damage or to minimize the suspension of business and continue operations.  Indeed, Underwriters have denied claims submitted by Plaintiffs GIO under their policies.

## II.      JURISDICTION AND VENUE

10.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, because Plaintiffs and Defendants are citizens of different countries, and because: (a) the Class consists of at least 100 members; (b) the amount in controversy exceeds $5,000,000 exclusive of interest and costs; and (c) no relevant exceptions apply to this claim.

11.      Venue is proper in this District under 28 U.S.C. § 1391, because the policies specifically state that service of suit may be made upon an agent domiciled in New York at a specific New York address.  The policies further state that, in the event the Underwriters fail to pay any amount claimed to be due, the Underwriters "will submit to the jurisdiction of a Court of competent jurisdiction within the United States."

## III.      THE PARTIES

*Plaintiffs*

12.      Plaintiff GIO Pizzeria & Bar Hospitality, LLC is a Florida LLC, with its principal place of business in Coral Springs, Florida.  Plaintiff GIO Pizzeria & Bar Hospitality, LLC owns and operates Nick's New Haven Style Pizzeria & Bar, located in Coral Springs, Florida.

13.      Plaintiff GIO Pizzeria Boca, LLC is a Florida LLC, with its principal place of business in Boca Raton, Florida.  Plaintiff GIO Pizzeria & Bar Hospitality, LLC owns and operates Nick's New Haven Style Pizzeria & Bar, located in Boca Raton, Florida.

*Defendants*

14.     Underwriters are composed of separate syndicates, in turn comprised of entities known as "Names," which underwrite insurance in a market known as Lloyd's of London.  Each "Name" and syndicate is organized under the laws of the United Kingdom and is located in and has its principal place of business in England.

### IV.    <u>FACTUAL BACKGROUND</u>

**A.     *The Special Property Coverage Form***

15.     In return for the payment of a premium, Underwriters issued Policy No. ARP-74910-20 to GIO Pizzeria & Bar Hospitality, LLC, for a policy period of June 1, 2019 to June 1, 2020, including a Business Income (And Extra Expense) Coverage Form.  Policy No. ARP-74910-20 is attached hereto as Exhibit A.  GIO Pizzeria & Bar Hospitality, LLC has performed all of its obligations under Policy No. ARP-74910-20, including the payment of premiums.  The Covered Property, with respect to the Special Property Coverage Form, is the Nick's Pizzeria at 2444 North University Drive, Coral Springs, Florida.

16.     In return for the GIO's premium payments, Underwriters issued Policy No. ARP-75209-20 to GIO Pizzeria Boca, LLC for a policy period of February 21, 2020 to February 21, 2021, including a Business Income (And Extra Expense) Coverage Form.  Policy No. ARP-75209-20 is attached hereto as Exhibit B.  GIO Pizzeria Boca, LLC has performed all of its obligations under Policy No. ARP-75209-20, including the payment of premiums.  The Covered Property, with respect to the Special Property Coverage Form, is the Nick's Pizzeria at 2240 NW 19 Street, Suite 904, Boca Raton, Florida.

17.     Each Plaintiff's Special Property Coverage Form, included within the policies attached as Exhibits A-B, includes identical Business Income, Civil Authority, Extra Expense, and Sue and Labor coverages.

4

18.     In many parts of the world, property insurance is sold on a specific peril basis.  Such policies cover a risk of loss if that risk of loss is specifically listed (e.g., hurricane, earthquake, H1N1, etc.).  Most property policies sold in the United States, however, including those sold by Underwriters insurance, are all-risk property damage policies.  These types of policies cover all risks of loss except for risks that are expressly and specifically excluded.  Under the heading "Covered Causes of Loss," Underwriters agreed to pay for direct physical loss "unless the loss is excluded or limited" in the policies.

19.     Underwriters did not exclude or limit coverage for losses from viruses in Plaintiffs' policies or those of the other Class members.

20.     Losses due to COVID-19 are a Covered Cause of Loss under the Underwriters' policies with the Special Property Coverage Form.

21.     In the Special Property Coverage Form, Underwriters agreed to pay for its insureds' actual loss of Business Income sustained due to the necessary suspension of its operations during the "period of restoration" caused by direct physical loss or damage. A "slowdown or cessation" of business activities at the Covered Property is a "suspension" under the policy, for which Underwriters agreed to pay for loss of Business Income during the "period of restoration" that begins 72 hours after the time of direct physical loss or damage.

22.     "Business Income" means net income (or loss) before tax that Plaintiffs would have earned and continuing normal operating expenses incurred, including payroll.

23.     The presence of virus or disease can constitute physical damage to property, as the insurance industry has recognized since at least 2006.  When preparing so-called "virus" exclusions to be placed in some policies, but not others, the insurance industry drafting arm, ISO, circulated a statement to state insurance regulators that included the following:

Disease-causing agents may render a product impure (change its quality or substance), or enable the spread of disease by their presence on interior building surfaces or the surfaces of personal property. When disease-causing viral or bacterial contamination occurs, potential claims involve the cost of replacement of property (for example, the milk), cost of decontamination (for example, interior building surfaces), and business interruption (time element) losses. Although building and personal property could arguably become contaminated (often temporarily) by such viruses and bacteria, the nature of the property itself would have a bearing on whether there is actual property damage. An allegation of property damage may be a point of disagreement in a particular case.

24.     In the Special Property Coverage Form, Underwriters also agreed to pay necessary Extra Expense that its insureds incur during the "period of restoration" that the insureds would not have incurred if there had been no direct physical loss or damage to the Covered Property.

25.     "Extra Expense" includes expenses to avoid or minimize the suspension of business, continue operations, and to repair or replace property.

26.     Underwriters also agreed to "pay for the actual loss of Business Income" that Plaintiffs sustains "and any Extra Expense caused by action of civil authority that prohibits access to" the Covered Property when a Covered Cause of Loss causes damage to property near the Covered Property, the civil authority prohibits access to property immediately surrounding the damaged property, the Covered Property is within the prohibited area, and the civil authority action is taken "in response to dangerous physical conditions."

27.     Underwriters' Special Property Coverage Form, under a section entitled "Duties in the Event of Loss" mandates that Underwriters' insureds "must see that the following are done in the event of loss. . . [t]ake all reasonable steps to protect the Covered Property from further damage and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim." This is commonly referred to as "Sue and Labor" coverage.

28.     Losses caused by COVID-19 and the related orders issued by local, state, and federal authorities triggered the Business Income, Extra Expense, Civil Authority, and Sue and Labor provisions of the Underwriters policy.

**B.      The Covered Cause of Loss**

29.     The presence of COVID-19 has caused civil authorities throughout the country to issue orders requiring the suspension of business at a wide range of establishments, including civil authorities with jurisdiction over Plaintiffs' businesses (the "Closure Orders").

**1.      The Florida Closure Orders**

30.     On March 17, 2020, Boca Raton issued a civil authority order requiring the closing of bars and from selling alcohol and banning dine-in eating in Boca Raton restaurants.  This order has been in effect since March 17, 2020.

31.     On March 17, 2020, Florida Governor Ron DeSantis issued a civil authority order restricting bars from selling alcohol and ordering every restaurant to limit its occupancy to 50% of current building capacity.  This order has been in effect since March 17, 2020.

32.     On March 18, 2020, Coral Springs issued a civil authority order requiring the closing of bars and effectively limiting the capacity of restaurants by requiring social distancing measures.  This order has been in effect since March 18, 2020.

33.     On March 20, 2020, Florida Governor Ron DeSantis issued a civil authority order requiring the suspension of alcohol sales for on-premises consumption and the suspension of all dine-in eating at restaurants.  This order has been in effect since March 20, 2020.

34.     On March 22, 2020, Broward County issued a civil authority order requiring the closure of bars in Broward County and banning dine-in eating in Broward County restaurants. This order has been in effect since March 22, 2020.

35.     The Florida, Broward County, Coral Springs, and Boca Raton Closure Orders were issued in response to the rapid spread of COVID-19 throughout Florida.

     **2.**     **The Impact of COVID-19 and the Closure Orders**

36.     The presence of COVID-19 caused direct physical loss of or damage to the covered property under the Plaintiffs' policies, and the policies of the other Class members, by denying use of and damaging the covered property, and by causing a necessary suspension of operations during a period of restoration.

37.     The Closure Orders prohibited access to Plaintiffs and the other Class members' Covered Property, and the area immediately surrounding Covered Property, in response to dangerous physical conditions resulting from a Covered Cause of Loss.

38.     As a result of the presence of COVID-19 and the Closure Orders, Plaintiffs and the other Class members lost Business Income and incurred Extra Expense.

39.     Plaintiffs submitted claims for loss to Underwriters under their policies due to the presence of COVID-19 and the Closure Orders, and Underwriters denied those claims.

## V.     CLASS ACTION ALLEGATIONS

40.     Plaintiffs bring this action pursuant to Rules 23(a), 23(b)(1), 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure, individually and on behalf of all others similarly situated.

41.     Plaintiffs seek to represent nationwide classes defined as:

- All persons and entities that: (a) had Business Income coverage under a property insurance policy issued by Underwriters; (b) suffered a suspension of business related to COVID-19, at the premises covered by their Underwriters property insurance policy; (c) made a claim under their property insurance policy issued by Underwriters; and (d) were denied Business Income coverage by Underwriters for the suspension of business resulting from the presence or threat of COVID-19 (the "Business Income Breach Class").

- All persons and entities that: (a) had Civil Authority coverage under a property insurance policy issued by Underwriters; (b) suffered loss of Business Income and/or Extra Expense caused by action of a civil authority; (c) made a claim under their property insurance policy issued by Underwriters; and (d) were denied Civil Authority coverage by Underwriters for the loss of Business Income and/or Extra Expense caused by a Closure Order (the "Civil Authority Breach Class").

- All persons and entities that: (a) had Extra Expense coverage under a property insurance policy issued by Underwriters; (b) sought to minimize the suspension of business in connection with COVID-19 at the premises covered by their Underwriters property insurance policy; (c) made a claim under their property insurance policy issued by Underwriters; and (d) were denied Extra Expense coverage by Underwriters despite their efforts to minimize the suspension of business caused by COVID-19 (the "Extra Expense Breach Class").

- All persons and entities that: (a) had a Sue and Labor provision under a property insurance policy issued by Underwriters; (b) sought to prevent property damage caused by COVID-19 by suspending or reducing business operations, at the premises covered by their Underwriters property insurance policy; (c) made a claim under their property insurance policy issued by Underwriters; and (d) were denied Sue and Labor coverage by Underwriters in connection with the suspension of business caused by COVID-19 (the "Sue and Labor Breach Class").

- All persons and entities with Business Income coverage under a property insurance policy issued by Underwriters that suffered a suspension of business due to COVID-19 at the premises covered by the business income coverage (the "Business Income Declaratory Judgment Class").

- All persons and entities with Civil Authority coverage under a property insurance policy issued by Underwriters that suffered loss of Business Income and/or Extra Expense caused by a Closure Order (the "Civil Authority Declaratory Judgment Class").

- All persons and entities with Extra Expense coverage under a property insurance policy issued by Underwriters that sought to minimize the suspension of business in connection with COVID-19 at the premises covered by their Underwriters property insurance policy (the "Extra Expense Declaratory Judgment Class").

- All persons and entities with a Sue and Labor provision under a property insurance policy issued by Underwriters that sought to prevent property damage caused by COVID-19 by suspending or reducing business operations, at the premises covered by their Underwriters property insurance policy (the "Sue and Labor Declaratory Judgment Class").

42.     Excluded from each defined Class are Defendants and any of their members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; governmental entities; and the Court staff assigned to this case and their immediate family members.  Plaintiffs reserve the right to modify or amend each of the Class definitions, as appropriate, during the course of this litigation.

43.     This action has been brought and may properly be maintained on behalf of each Class proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

44.     **Numerosity—Federal Rule of Civil Procedure 23(a)(1).**  The members of each defined Class are so numerous that individual joinder of all Class members is impracticable.  While Plaintiffs are informed and believes that there are thousands of members of each Class, the precise number of Class members is unknown to Plaintiffs but may be ascertained from Defendants' books and records.  Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, internet postings, and/or published notice.

45.     **Commonality and Predominance—Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).**  This action involves common questions of law and fact, which predominate over any questions affecting only individual Class members, including, without limitation:

a.     Underwriters issued all-risk policies to the members of the Class in exchange for payment of premiums by the Class members;

b.  whether the Class suffered a covered loss based on the common policies issued to members of the Class;

c.  whether Underwriters wrongfully denied all claims based on COVID-19;

d.  whether Underwriters' Business Income coverage applies to a suspension of business caused by COVID-19;

e.  whether Underwriters' Civil Authority coverage applies to a loss of Business Income caused by the orders of state governors requiring the suspension of business as a result of COVID-19;

f.  whether Underwriters' Extra Expense coverage applies to efforts to minimize a loss caused by COVID-19;

g.  whether Underwriters' Sue and Labor provision applies to require Underwriters to pay for efforts to reduce damage caused by COVID-19;

h.  whether Underwriters has breached its contracts of insurance through a blanket denial of all claims based on business interruption, income loss or closures related to COVID-19 and the related closures; and

i.  whether Plaintiffs and the Class are entitled to an award of reasonable attorney fees, interest and costs.

46.     **Typicality—Federal Rule of Civil Procedure 23(a)(3).**  Plaintiffs' claims are typical of the other Class members' claims because Plaintiffs and the other Class members are all similarly affected by Defendants' refusal to pay under its Business Income, Civil Authority, Extra Expense, and Sue and Labor coverages.  Plaintiffs' claims are based upon the same legal theories as those of the other Class members.  Plaintiffs and the other Class members sustained damages as a direct and proximate result of the same wrongful practices in which Defendants engaged.

11

47.     **Adequacy of Representation—Federal Rule of Civil Procedure 23(a)(4).** Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other Class members who they seek to represent, Plaintiffs have retained counsel competent and experienced in complex class action litigation, including successfully litigating class action cases similar to this one, where insurers breached contracts with insureds by failing to pay the amounts owed under their policies, and Plaintiffs intend to prosecute this action vigorously. The interests of the above-defined Classes will be fairly and adequately protected by Plaintiffs and their counsel.

48.     **Inconsistent or Varying Adjudications and the Risk of Impediments to Other Class Members' Interests—Federal Rule of Civil Procedure 23(b)(1).**  Plaintiffs seek class-wide adjudication as to the interpretation, and resultant scope, of Defendants' Business Income, Civil Authority, Extra Expense, and Sue and Labor coverages.  The prosecution of separate actions by individual members of the Classes would create an immediate risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for the Defendants. Moreover, the adjudications sought by Plaintiffs could, as a practical matter, substantially impair or impede the ability of other Class members, who are not parties to this action, to protect their interests.

49.     **Declaratory and Injunctive Relief—Federal Rule of Civil Procedure 23(b)(2).** Defendants acted or refused to act on grounds generally applicable to Plaintiffs and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class members.

50.     **Superiority—Federal Rule of Civil Procedure 23(b)(3).**  A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.

Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VI.   CLAIMS FOR RELIEF

### COUNT I
### BREACH OF CONTRACT – BUSINESS INCOME COVERAGE
**(Claim Brought on Behalf of the Business Income Breach Class)**

51.     Plaintiffs GIO ("Plaintiffs" for the purpose of this claim) repeat and reallege Paragraphs 1-50 as if fully set forth herein.

52.     Plaintiffs bring this Count individually and on behalf of the other members of the Business Income Breach Class.

53.     Plaintiffs' Underwriters policies, as well as those of the other Business Income Breach Class members, are contracts under which Underwriters were paid premiums in exchange for their promise to pay Plaintiffs and the other Business Income Breach Class members' losses for claims covered by the policy.

54.     In the Special Property Coverage Form, Underwriters agreed to pay for its insureds' actual loss of Business Income sustained due to the necessary suspension of its operations during the "period of restoration."

55.     A "slowdown or cessation" of business activities at the Covered Property is a "suspension" under the policy, for which Underwriters agreed to pay for loss of Business Income during the "period of restoration" that begins within 72 hours after the time of direct physical loss or damage.

56.     "Business Income" means net income (or loss) before tax that Plaintiffs and the other Business Income Breach Class members would have earned "if no physical loss or damage had occurred" and continuing normal operating expenses incurred.

57.     COVID-19 caused direct physical loss and damage to Plaintiffs and the other Business Income Breach Class members' Covered Properties, requiring suspension of operations at the Covered Properties.  Losses caused by COVID-19 thus triggered the Business Income provision of Plaintiffs and the other Business Income Breach Class members' Underwriters' policies.

58.     Plaintiffs and the other Business Income Breach Class members have complied with all applicable provisions of their policies and/or those provisions have been waived by Underwriters, or Underwriters is estopped from asserting them, and yet Underwriters has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms.

59.     By denying coverage for any Business Income losses incurred by Plaintiffs and the other Business Income Breach Class members in connection with the COVID-19 pandemic, Underwriters has breached its coverage obligations under the policies.

60.     As a result of Underwriters' breaches of the policies, Plaintiffs and the other Business Income Breach Class members have sustained substantial damages for which Underwriters is liable, in an amount to be established at trial.

**COUNT II**
**BREACH OF CONTRACT – CIVIL AUTHORITY COVERAGE**
**(Claim Brought on Behalf of the Civil Authority Breach Class)**

61.     Plaintiffs GIO ("Plaintiffs" for the purpose of this claim) repeat and reallege Paragraphs 1-50 as if fully set forth herein.

62.     Plaintiffs bring this Count individually and on behalf of the other members of the Civil Authority Breach Class.

63.     Plaintiffs' Underwriters insurance policies, as well as those of the other Civil Authority Breach Class members, are contracts under which Underwriters was paid premiums in exchange for its promise to pay Plaintiffs and the other Civil Authority Breach Class members' losses for claims covered by the policy.

64.     Underwriters agreed to "pay for the actual loss of Business Income" that insureds sustain "and any Extra Expense caused by action of civil authority that prohibits access to" the Covered Property when a Covered Cause of Loss causes damage to property near the Covered Property, the civil authority prohibits access to property immediately surrounding the damaged property, the Covered Property is within the prohibited area, and the civil authority action is taken "in response to dangerous physical conditions."

65.     The Closure Orders triggered the Civil Authority provision under Plaintiffs and the other members of the Civil Authority Breach Class's Underwriters insurance policies.

66.     Plaintiffs and the other members of the Civil Authority Breach Class have complied with all applicable provisions of the policies, and/or those provisions have been waived by Underwriters, or is Underwriters estopped from asserting them, and yet Underwriters has abrogated its insurance coverage obligations pursuant to the Policies' clear and unambiguous terms.

67.     By denying coverage for any business losses incurred by Plaintiffs and other members of the Civil Authority Breach Class in connection with the Closure Orders and the COVID-19 pandemic, Underwriters has breached its coverage obligations under the policies.

68.     As a result of Underwriters' breaches of the policies, Plaintiffs and the other members of the Civil Authority Breach Class have sustained substantial damages for which Underwriters is liable, in an amount to be established at trial.

**COUNT III**
**BREACH OF CONTRACT – EXTRA EXPENSE COVERAGE**
**(Claim Brought on Behalf of the Extra Expense Breach Class)**

69.     Plaintiffs GIO ("Plaintiffs" for the purpose of this claim) repeat and reallege Paragraphs 1-50 as if fully set forth herein.

70.     Plaintiffs bring this Count individually and on behalf of the other members of the Extra Expense Breach Class.

71.     Plaintiffs' Underwriters insurance policies, as well as those of the other Extra Expense Breach Class members, are contracts under which Underwriters was paid premiums in exchange for its promise to pay Plaintiffs and the other Extra Expense Breach Class members' losses for claims covered by the policy.

72.     In the Special Property Coverage Form, Underwriters also agreed to pay necessary Extra Expense that its insureds incur during the "period of restoration" that the insureds would not have incurred if there had been no direct physical loss or damage to the Covered Property.

73.     "Extra Expense" includes expenses to avoid or minimize the suspension of business, continue operations, and to repair or replace property.

74.     Due to COVID-19 and the Closure Orders, Plaintiffs and the other members of the Extra Expense Breach Class incurred Extra Expense at Covered Property

75.     Plaintiffs and the other members of the Extra Expense Breach Class have complied with all applicable provisions of the policies and/or those provisions have been waived by Underwriters, or Underwriters is estopped from asserting them, and yet Underwriters has

abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms.

76.     By denying coverage for any business losses incurred by Plaintiffs and the other members of the Extra Expense Breach Class in connection with the Closure Orders and the COVID-19 pandemic, Underwriters has breached its coverage obligations under the policies.

77.     As a result of Underwriters' breaches of the policies, Plaintiffs and the other members of the Extra Expense Breach Class have sustained substantial damages for which Underwriters is liable, in an amount to be established at trial.

**COUNT IV**
**BREACH OF CONTRACT – SUE AND LABOR COVERAGE**
**(Claim Brought on Behalf of the Sue and Labor Breach Class)**

78.     Plaintiffs GIO ("Plaintiffs" for the purpose of this claim) repeat and reallege Paragraphs 1-50 as if fully set forth herein.

79.     Plaintiffs bring this Count individually and on behalf of the other members of the Sue and Labor Breach Class.

80.     Plaintiffs' Underwriters policies, as well as those of the other Sue and Labor Breach Class members, are contracts under which Underwriters was paid premiums in exchange for its promise to pay Plaintiffs and the other Sue and Labor Breach Class members' losses for claims covered by the policy.

81.     In the Special Property Coverage Form, Underwriters agreed to give due consideration in settlement of a claim to expenses incurred in taking all reasonable steps to protect Covered Property from further damage.

82.     In complying with the Closure Orders and otherwise suspending or limiting operations, Plaintiffs and other members of the Sue and Labor Breach Class incurred expenses in connection with reasonable steps to protect Covered Property.

83.     Plaintiffs and the other members of the Sue and Labor Breach Class have complied with all applicable provisions of the policy and/or those provisions have been waived by Underwriters, or Underwriters is estopped from asserting them, and yet Underwriters has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms.

84.     By denying coverage for any Sue and Labor expenses incurred by Plaintiffs and the other members of the Sue and Labor Breach Class in connection with the Closure Orders and the COVID-19 pandemic, Underwriters has breached its coverage obligations under the policies.

85.     As a result of Underwriters' breaches of the policies, Plaintiffs and the other members of the Sue and Labor Breach Class have sustained substantial damages for which Underwriters is liable, in an amount to be established at trial.

**COUNT V**
**DECLARATORY JUDGMENT – BUSINESS INCOME COVERAGE**
**(Claim Brought on Behalf of the Business Income Declaratory Judgment Class)**

86.     Plaintiffs Underwriters ("Plaintiffs" for the purpose of this claim) repeat and realleges Paragraphs 1-50 as if fully set forth herein.

87.     Plaintiffs bring this Count individually and on behalf of the other members of the Business Income Declaratory Judgment Class.

88.     Plaintiffs' Underwriters policies, as well as those of the other Business Income Declaratory Judgment Class members, are contracts under which Underwriters was paid premiums in exchange for its promise to pay Plaintiffs and the other Business Income Declaratory Judgment Class members' losses for claims covered by the policy.

89.     Plaintiffs and the other Business Income Declaratory Judgment Class members have complied with all applicable provisions of the policies and/or those provisions have been waived by Underwriters, or Underwriters is estopped from asserting them, and yet Underwriters

has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiffs and the other Business Income Declaratory Judgment Class members are entitled.

90.     Underwriters has denied claims related to COVID-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim.

91.     An actual case or controversy exists regarding Plaintiffs and the other Business Income Declaratory Judgment Class members' rights and Underwriters' obligations under the policies to reimburse Plaintiffs for the full amount of Business Income losses incurred by Plaintiffs and the other Business Income Declaratory Judgment Class members in connection with suspension of their businesses stemming from the COVID-19 pandemic.

92.     Pursuant to 28 U.S.C. § 2201, Plaintiffs and the other Business Income Declaratory Judgment Class members seek a declaratory judgment from this Court declaring the following:

    i.     Plaintiffs and the other Business Income Declaratory Judgment Class members' Business Income losses incurred in connection with the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under their policies; and

    ii.     Underwriters is obligated to pay Plaintiffs and the other Business Income Declaratory Judgment Class members for the full amount of the Business Income losses incurred and to be incurred in connection with the Closure Orders during the period of restoration and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

**COUNT VI**
**DECLARATORY JUDGMENT – CIVIL AUTHORITY COVERAGE**
**(Claim Brought on Behalf of the Civil Authority Declaratory Judgment Class)**

93.     Plaintiffs GIO ("Plaintiffs" for the purpose of this claim) repeat and reallege Paragraphs 1-50 as if fully set forth herein.

94.     Plaintiffs bring this Count individually and on behalf of the other members of the Civil Authority Declaratory Judgment Class.

95.     Plaintiffs' Underwriters insurance policy, as well as those of the other Civil Authority Declaratory Judgment Class members, are contracts under which Underwriters was paid premiums in exchange for its promise to pay Plaintiffs and the other Civil Authority Declaratory Judgment Class members' losses for claims covered by the policy.

96.     Plaintiffs and the other Civil Authority Declaratory Judgment Class members have complied with all applicable provisions of the policies and/or those provisions have been waived by Underwriters, or Underwriters is estopped from asserting them, and yet Underwriters has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiffs and the other Class members are entitled.

97.     Underwriters has denied claims related to COVID-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim.

98.     An actual case or controversy exists regarding Plaintiffs and the other Civil Authority Declaratory Judgment Class members' rights and Underwriters' obligations under the policies to reimburse Plaintiffs and the other Civil Authority Declaratory Judgment Class members for the full amount of covered Civil Authority losses incurred by Plaintiffs and the other Civil

Authority Declaratory Judgment Class members in connection with Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

99.     Pursuant to 28 U.S.C. § 2201, Plaintiffs and the other Civil Authority Declaratory Judgment Class members seek a declaratory judgment from this

Court declaring the following:

      i.    Plaintiffs and the other Civil Authority Declaratory Judgment Class members' Civil Authority losses incurred in connection with the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under their policies; and

      ii.    Underwriters is obligated to pay Plaintiffs and the other Civil Authority Declaratory Judgment Class members the full amount of the Civil Authority losses incurred and to be incurred in connection with the covered losses related to the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic

## COUNT VII
## DECLARATORY JUDGMENT – EXTRA EXPENSE COVERAGE
### (Claim Brought on Behalf of the Extra Expense Declaratory Judgment Class)

100.     Plaintiffs GIO ("Plaintiffs" for the purpose of this claim) repeat and reallege Paragraphs 1-50 as if fully set forth herein.

101.     Plaintiffs bring this Count individually and on behalf of the other members of the Extra Expense Declaratory Judgment Class.

102.     Plaintiffs' Underwriters insurance policy, as well as those of the other Extra Expense Declaratory Judgment Class members, are contracts under which Underwriters was paid premiums in exchange for its promise to pay Plaintiffs and the other Extra Expense Declaratory Judgment Class members' losses for claims covered by the policy.

103.    Plaintiffs and the other Extra Expense Declaratory Judgment Class members have complied with all applicable provisions of the policies and/or those provisions have been waived by Underwriters, or Underwriters is estopped from asserting them, and yet Underwriters has abrogated its insurance coverage obligations pursuant to the policies clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiffs and the other Class members are entitled.

104.    Underwriters has denied claims related to COVID-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim.

105.    An actual case or controversy exists regarding Plaintiffs and the other Extra Expense Declaratory Judgment Class members' rights and Underwriters' obligations under the policies to reimburse Plaintiffs and the other Extra Expense Declaratory Judgment Class members for the full amount of Extra Expense losses incurred by Plaintiffs in connection with Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

106.    Pursuant to 28 U.S.C. § 2201, Plaintiffs and the other Extra Expense Declaratory Judgment Class members seek a declaratory judgment from this Court declaring the following:

    i.    Plaintiffs and the other Extra Expense Declaratory Judgment Class members' Extra Expense losses incurred in connection with the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under their policies; and

    ii.    Underwriters is obligated to pay Plaintiffs and the other Extra Expense Declaratory Judgment Class members for the full amount of the Extra Expense losses incurred and to be incurred in connection with the covered losses related to the Closure

Orders during the period of restoration and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

## COUNT VIII
## DECLARATORY JUDGMENT – SUE AND LABOR COVERAGE
### (Claim Brought on Behalf of the Sue and Labor Declaratory Judgment Class)

107.    Plaintiffs GIO ("Plaintiffs" for the purpose of this claim) repeat and reallege Paragraphs 1-50 as if fully set forth herein.

108.    Plaintiffs bring this Count individually and on behalf of the other members of the Sue and Labor Declaratory Judgment Class.

109.    Plaintiffs' Underwriters insurance policy, as well as those of the other Sue and Labor Declaratory Judgment Class members, are contracts under which Underwriters was paid premiums in exchange for its promise to pay Plaintiffs and the other Sue and Labor Declaratory Judgment Class members' reasonably incurred expenses to protect Covered Property.

110.    Plaintiffs and the other Sue and Labor Declaratory Judgment Class members have complied with all applicable provisions of the policies and/or those provisions have been waived by Underwriters, or Underwriters is estopped from asserting them, and yet Underwriters has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiffs is entitled.

111.    Underwriters has denied claims related to COVID-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim.

112.    An actual case or controversy exists regarding Plaintiffs and the other Sue and Labor Declaratory Judgment Class members' rights and Underwriters' obligations under the policies to reimburse Plaintiffs and the other Sue and Labor Declaratory Judgment Class members

for the full amount Plaintiffs and the other members of the Sue and Labor Declaratory Judgment Class reasonably incurred to protect Covered Property from further damage by COVID-19.

113.   Pursuant to 28 U.S.C. § 2201, Plaintiffs and the other Sue and Labor Declaratory Judgment Class members seek a declaratory judgment from this Court declaring the following:

     i.    Plaintiffs and the other Sue and Labor Declaratory Judgment Class members reasonably incurred expenses to protect Covered Property from further damage by COVID-19 are insured losses under their policies; and

    ii.    Underwriters is obligated to pay Plaintiffs and the other Sue and Labor Declaratory Judgment Class members for the full amount of the expenses they reasonably incurred to protect Covered Property from further damage by COVID-19.

## VII.   REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the other Class members, respectfully request that the Court enter judgment in their favor and against Defendants as follows:

a.   Entering an order certifying the proposed nationwide Classes, as requested herein, designating Plaintiffs as Class representative, and appointing Plaintiffs' undersigned attorneys as Counsel for the Classes;

b.   Entering judgment on Counts I-IV in favor of Plaintiffs GIO and the members of the Business Income Breach Class, the Civil Authority Breach Class, the Extra Expense Breach Class, and the Sue and Labor Breach Class; and awarding damages for breach of contract in an amount to be determined at trial;

c.   Entering declaratory judgments on Counts V-VIII in favor of Plaintiffs and the members of the Business Income Declaratory Judgment Class, the Civil Authority Declaratory Judgment Class, the Extra Expense Declaratory Judgment Class, and the Sue and Labor Declaratory Judgment Class as follows;

      i.     Business Income, Civil Authority, Extra Expense, and Sue and Labor losses incurred in connection with the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under their policies; and

     ii.    Underwriters is obligated to pay for the full amount of the Business Income, Civil Authority, Extra Expense, and Sue and Labor losses incurred and to be incurred related to COVID-19, the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic;

d.     Ordering Defendants to pay both pre- and post-judgment interest on any amounts awarded;

e.     Ordering Defendants to pay attorneys' fees and costs of suit; and

f.     Ordering such other and further relief as may be just and proper.

## VIII.  JURY DEMAND

Plaintiffs hereby demand a trial by jury on all claims so triable.

Dated:  April 17, 2020           Respectfully submitted,

                           */s/Greg G. Gutzler*
                           Greg G. Gutzler
                           **DiCELLO LEVITT GUTZLER LLC**
                           444 Madison Avenue, Fourth Floor
                           New York, New York  10022
                           Telephone:  646-933-1000
                           ggutzler@dicellolevitt.com

                           Adam J. Levitt
                           Amy E. Keller*
                           Daniel R. Ferri*
                           Mark Hamill*
                           Laura E. Reasons*
                           **DiCELLO LEVITT GUTZLER LLC**
                           Ten North Dearborn Street, Sixth Floor

Chicago, Illinois  60602
Telephone:  312-214-7900
alevitt@dicellolevitt.com
dferri@dicellolevitt.com
mhamill@dicellolevitt.com

Mark A. DiCello*
Kenneth P. Abbarno*
Mark Abramowitz*
**DiCELLO LEVITT GUTZLER LLC**
7556 Mentor Avenue
Mentor, Ohio  44060
Telephone:  440-953-8888
madicello@dicellolevitt.com
kabbarno@dicellolevitt.com
mabramowitz@dicellolevitt.com

Mark Lanier
Alex Brown
Skip McBride*
**THE LANIER LAW FIRM PC**
10940 West Sam Houston Parkway North
Suite 100
Houston, Texas  77064
Telephone:  713-659-5200
WML@lanierlawfirm.com
alex.brown@lanierlawfirm.com
skip.mcbride@lanierlawfirm.com

Evan Janush
**THE LANIER LAW FIRM PC**
126 East 56th Street, Sixth Floor
New York, New York  10022
Telephone:  212-421-2800
WML@lanierlawfirm.com
alex.brown@lanierlawfirm.com

Timothy W. Burns*
Jeff J. Bowen*
Jesse J. Bair*
Freya K. Bowen*
**BURNS BOWEN BAIR LLP**
One South Pinckney Street, Suite 930
Madison, Wisconsin  53703
Telephone: 608-286-2302
tburns@bbblawllp.com
jbowen@bbblawllp.com

jbair@bbblawllp.com
fbowen@bbblawllp.com

Douglas Daniels*
**DANIELS & TREDENNICK**
6363 Woodway, Suite 700
Houston, Texas  77057
Telephone:  713-917-0024
douglas.daniels@dtlawyers.com

***Counsel for Plaintiffs
and the Proposed Classes***

\* Applications for admission *pro hac vice* to be filed