UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-61741-CIV-SMITH

GIO PIZZERIA & BAR HOSPITALITY, LLC
and GIO PIZZERIA BOCA, LLC, individually
and on behalf of all others similarly situated,

        Plaintiffs,

vs.

CERTAIN UNDERWRITERS AT LLOYD'S,
LONDON SUBSCRIBING TO POLICY
NUMBERS ARP-74910-20 and ARP-75209-
20,

        Defendants.
_____/

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

This matter is before the Court on Defendants, Certain Underwriters at Lloyd's, London Subscribing to Policy Numbers ARP-74910 and ARP-75209-20's Motion to Dismiss Plaintiffs' Second Amended Complaint [DE 41], Plaintiffs' Opposition [DE 46], and Defendants' Reply [DE 4]. Additionally, Plaintiffs have filed several Notices of Supplemental Authority [DE 51, 52, 53]. Defendants issued an insurance policy to each of the named Plaintiffs. Plaintiffs have made claims under the policies seeking income lost during the COVID-19 pandemic. Defendants have denied the claims. Plaintiffs' Second Amended Class Action Complaint ("Second Amended Complaint") [DE 38] alleges four counts for breach of contract and four counts for declaratory relief. Defendants move to dismiss all counts based on the language of the policies and Plaintiffs' failure to state a cause of action upon which relief can be granted. For the reasons set forth below, Defendants' Motion is granted.

I.      **FACTS ALLEGED IN THE SECOND AMENDED COMPLAINT**[1]

Plaintiffs own and operate a full-service bar and restaurant in Coral Springs, Florida and a full-service bar and restaurant in Boca Raton, Florida (the "Properties"). Defendants issued two insurance policies, one covering each of the Properties. Policy No. ARP-74910-20 covered the bar and restaurant located in Coral Springs, Florida from June 1, 2019 to June 1, 2020. Policy No. ARP-75209-20 covered the bar and restaurant located in Boca Raton, Florida from February 21, 2020 to February 21, 2021.

The two policies (the "Policies") contain the same relevant language.[2] The Policies insure against "direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." (Policy [DE 38-1] at p. 55 of 121.[3]) "Covered Cause of Loss" is defined as "direct physical loss unless the loss is excluded or limited in this policy." (*Id.* at p. 83 of 121.) Plaintiffs sue for breach of the Business Income, Extra Expense, Civil Authority and Sue and Labor provisions of the Policies.

The Business Income provision states:

> We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" **must be caused by direct physical loss of or damage to property** at premises which are described in the Declarations and for which a Business Income Limit Of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss.

(*Id.* at p. 71 of 121 (emphasis added).) The Extra Expense provision states that it is only applies

---

[1] The Second Amended Complaint contains class action allegations. Because they are not relevant to the issues raised by the Motion to Dismiss, the class allegations are omitted from the summary below.

[2] Because the Policies contain the same relevant language, the Court will cite to only one of the Policies.

[3] The page numbers cited are to the page numbers assigned by CM/ECF, not the page numbers on the Policy.

2

if the Business Income Provision applies. (*Id.*) It defines "extra expense" as: "necessary expenses you incur during the 'period of restoration' that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss." (*Id.*) The term "period of restoration," which is used in the Business Income and Extra Expense provisions, is defined as the period of time that:

>    a. Begins:
>       (1) 72 hours after the time of direct physical loss or damage for Business Income Coverage; or
>       (2) Immediately after the time of direct physical loss or damage for Extra Expense Coverage;
>    caused by or resulting from any Covered Cause of Loss at the described premises; and
>
>    b. Ends on the earlier of:
>       (1) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or
>       (2) The date when business is resumed at anew permanent location.

(*Id.* at p. 79 of 121.)

> The Policies also include Civil Authority coverage:
>
> When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:
> (1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and
> (2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

(*Id.* at p. 72 of 121.)

The Policies also impose duties on the insured Plaintiffs in the event of loss. In a section titled "Duties in the Event of Loss," the Policies state: "You must see that the following are done

3

in the event of loss: . . . Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim." (*Id.* at 75 of 121.)  According to the Second Amended Complaint, this is called a "Sue and Labor" provision.  (Second Am. Compl. ¶ 36.)

Plaintiffs have made claims under the Policies to recover lost business income resulting from the COVID-19 pandemic and the orders issued by state and local government authorities, which either restricted use of the Properties or closed them.  Plaintiffs allege that the Properties suffered direct physical loss or damage because they have become unsafe for their intended purpose, as a result of COVID-19.  Additionally, Plaintiffs allege COVID-19 has denied Plaintiffs the use of and damaged their covered Properties, required physical repair or alterations to the covered Properties, and caused a necessary suspension of operations during a period of restoration.  Consequently, the Properties' business function has been impaired.

Plaintiffs' breach of contract counts allege that Defendants breached four provisions in the Policies: (1) the business income provision, (2) the civil authority provision, (3) extra expense provision, and (4) sue and labor provision.  The declaratory judgment counts seek declarations regarding Defendants' obligations under each of these provisions.

## II.    MOTION TO DISMISS STANDARD

The purpose of a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the facial sufficiency of a complaint.  *See* Fed. R. Civ. P. 12(b)(6).  The rule permits dismissal of a complaint that fails to state a claim upon which relief can be granted.  *See id.*  It should be read alongside Federal Rule of Civil Procedure 8(a)(2), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Although a complaint challenged by a Rule 12(b)(6) motion to dismiss does not need detailed factual

4

allegations, a plaintiff is still obligated to provide the "grounds" for his entitlement to relief, and a "formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

When a complaint is challenged under Rule 12(b)(6), a court will presume that all well-pleaded allegations are true and view the pleadings in the light most favorable to the plaintiff. *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1066 (11th Cir. 2007). However, once a court "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," it must determine whether the well-pled facts "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). A complaint can only survive a 12(b)(6) motion to dismiss if it contains factual allegations that are "enough to raise a right to relief above the speculative level, on the assumption that all the [factual] allegations in the complaint are true." *Twombly*, 550 U.S. at 555. However, a well-pled complaint survives a motion to dismiss "even if it strikes a savvy judge that actual proof of these facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id.* at 556.

### III. DISCUSSION

Defendants seek to dismiss Plaintiffs' claims because: (1) Plaintiffs have failed to allege direct physical loss of or damage to the insured Properties; (2) Plaintiffs have not pled a valid civil authority claim; (3) coverage is barred by the contamination exclusions; and (4) Plaintiffs have failed to allege a breach of the Policies. Plaintiffs argue that, at the motion to dismiss stage, a court must accept as true the facts set forth in the complaint and, therefore, Plaintiffs have adequately pled their claims.

#### A. Direct Physical Loss of or Damage to the Property

For a claim to be covered under the Business Income and Extra Expense provisions of the

Policies, there must be a "direct physical loss of or damage to" the insured property. The parties dispute the meaning of this phrase, which is not defined in the Policies.

In *Mama Jo's Inc. v. Sparta Insurance Co.*, 823 F. App'x 868 (11th Cir. 2020), *cert. denied,* No. 20-998, 2021 WL 1163753 (U.S. Mar. 29, 2021), the Eleventh Circuit considered the meaning of the phrase "direct physical loss of or damage to." In *Mama Jo's,* an insured restaurant filed a claim for costs incurred to clean the restaurant and for loss of business income after debris and dust from nearby construction fell onto and into the restaurant. *Id.* at 871-72. Applying Florida law,[4] the Eleventh Circuit concluded that:

> "A 'loss' is the diminution of value of something [ ]. Loss, *Black's Law Dictionary* (10th ed. 2014). 'Direct' and 'physical' modify loss and impose the requirement that the damage be actual." *Homeowners Choice Prop. & Cas. v. Maspons*, 211 So. 3d 1067, 1069 (Fla. 3d DCA 2017); *see also Vazquez v. Citizens Prop. Ins. Corp.*, [304] So.3d [1280], [1284], 2020 WL 1950831, at *3 (Fla. 3d DCA 2020).

*Id.* at 879. The Eleventh Circuit concluded that "an item or structure that merely needs to be cleaned has not suffered a 'loss' which is both 'direct' and 'physical.'" *Id.* at 879.

Numerous courts have concluded that, "under Florida law, loss of use of property for its intended purpose does not constitute 'direct physical loss.'" *Cafe La Trova LLC v. Aspen Specialty Ins. Co.*, -- F. Supp. 3d --, No. 20-22055-CIV, 2021 WL 602585, at *8 (S.D. Fla. Feb. 16, 2021); *see also Atma Beauty, Inc. v. HDI Glob. Specialty SE*, No. 1:20-CV-21745, 2020 WL 7770398, at *4 (S.D. Fla. Dec. 30, 2020) (dismissing a complaint that alleged suspension of business operations, loss of access to the business, loss of business income, incurrence of extra expenses, and diminution of value and intended use of the business but failed to "clearly articulate the *actual*

---

[4] Florida law applies to this matter. First, the parties implicitly concede that Florida law is the applicable law. *See* DE 41 at 6-7, DE 46 at 11-12. Second, the Policies covered properties in Florida and, it appears, were entered into in Florida. *See* Policy Face Page [DE 38-1 at 2].

physical loss or damage" to the business); *SA Palm Beach LLC v. Certain Underwriters at Lloyd's, London*, -- F. Supp. 3d --, No. 9:20-CV-80677-UU, 2020 WL 7251643, at *5 (S.D. Fla. Dec. 9, 2020) (holding that inability to use property for its intended purpose is not a "direct physical loss of or damage to property"). Accordingly, Plaintiffs must allege actual, physical damage to the Properties in order to claim coverage under the Policies.

Here, Plaintiffs have alleged that the "presence of COVID-19 caused direct physical loss of or damage to the covered property . . . by: (i) causing direct physical loss of or damage to the covered property; (ii) denying use of and damaging the covered property; (iii) requiring physical repair and/or alterations to the covered property; and/or (iv) by causing a necessary suspension of operations during a period of restoration." (Second Am. Compl. ¶ 55.) First, as set out above, conclusions are not entitled to a presumption of truth at the motion to dismiss stage. Therefore, the Court need not consider Plaintiffs' conclusory statements that COVID-19 caused direct physical loss of or damage to the Properties. Further, the fact that Plaintiffs chose to make alterations to the Properties, causing a suspension of operations, does not mean that Plaintiffs have adequately pled that there was a direct physical loss of or damage to the Properties. Under the Policies, a "period of restoration" begins "after the time of direct physical loss or damage." Thus, without a direct physical loss or damage, there is no period of restoration. Plaintiffs cite to numerous cases from other jurisdictions for the proposition that physical loss can occur without any changes to the property. However, those cases do not apply Florida law, which requires actual, physical damage to property to constitute a "direct physical loss of or damage to property." Thus, these cases do not support Plaintiffs' claim.

Plaintiffs also argue that they have alleged actual structural damage to the Properties that would constitute direct physical loss or damage. Plaintiffs maintain that they have suffered

7

physical loss or damage because their Properties have become unsafe for their intended purpose, business functions have been impaired, and the presence of the virus has resulted in physical damage to the Properties. Despite making these conclusory allegations, Plaintiffs' fail to plead any facts to support these conclusions. Even assuming the truth of the allegations that the Properties have become unsafe for their intended purpose and business functions have been impaired, Plaintiffs have not pled how such facts amount to "direct physical loss of or damage to property," as defined under Florida law. Merely calling the harm "physical" does not make it so. Further, while Plaintiffs plead that the presence of the virus has resulted in actual physical damage to the Properties, there are no facts establishing that the virus was actually present on the Properties or what direct physical loss or damage the Properties have suffered. Again, Plaintiffs rely on authority not based on Florida law. Plaintiffs also argue that impairment of function constitutes direct physical loss or damage. However, Plaintiffs have provided no Florida law to support that proposition. Consequently, Plaintiffs have failed to allege a "direct physical loss of or damage to property" that would bring Plaintiffs' damages within the Business Income and Extra Expense provisions of the Policy.

### B. Civil Authority Coverage

Under the Civil Authority provision in the Policies, Plaintiffs may recover lost business income and extra expenses if a covered cause of loss causes damage to property other than the insureds' property and access to the area immediately surrounding the damaged property, which includes the insureds' property, is prohibited by civil authority as a result of the damage. Defendants argue that Plaintiffs' claims under the Civil Authority provision must be dismissed because (1) there was no physical damage to surrounding property; (2) access to the Properties was limited but not "prohibited" by the government orders; and (3) the government orders were

8

not taken "in response" to damaged property.

Defendants argue that, because there was no physical damage to the area surrounding Plaintiffs' Properties, the Civil Authority coverage was never triggered. The Second Amended Complaint alleges that COVID-19 caused direct physical loss or damage to property near Plaintiffs' Properties. However, as set forth above, such damage is not physical and merely calling it such does not make it so. There are no allegations in the Second Amended Complaint that would support the conclusory allegations that the area surrounding Plaintiffs' Properties suffered direct physical loss or damage.

Further, there is nothing in the Second Amended Complaint, or the relevant government orders, that indicates that the government orders were issued "as a result of the damage" to the surrounding property, as required under the Civil Authority provision of the Policies. Plaintiffs have not responded to this issue. Nor have Plaintiffs pointed to any language in any of the government orders that supports the idea that the orders were issued "as a result of the damage" to the properties surrounding Plaintiffs' Properties. Thus, the Civil Authority provision of the Policies provides no basis for Plaintiffs' claims.

### C.   Sue and Labor Coverage

Plaintiffs' breach of the Sue and Labor provision claim asserts that Defendants breached the Sue and Labor provision by failing to cover expenses incurred by Plaintiffs to protect their Properties from further damage. However, the plain language of the Sue and Labor provision makes it clear that the provision only applies if there has been a loss — the section is titled "Duties *in the Event of Loss*;" the provision states, "You must see that the following are done *in the event of loss;*" and it requires the insured to take steps to protect covered property "from *further damage*." (emphasis added.) Thus, if there is no coverage under another section of the Policies,

9

the Sue and Labor provision does not create one. *See Swire Pac. Holdings, Inc. v. Zurich Ins. Co.*, 845 So. 2d 161, 168 (Fla. 2003) (holding that a Sue and Labor clause stating "in case of loss or damage" applies only after an actual loss has occurred or is occurring). Thus, because Plaintiffs have failed to allege a covered loss, the Sue and Labor clause is inapplicable.

## IV.   CONCLUSION

As set out above, Plaintiffs' claims are not covered under the Business Income provision, the Civil Authority provision, Extra Expense provision, or the Sue and Labor provision. Consequently, Count I for breach of contract based on the Business Income provision is dismissed, Count II for breach of contract based on the Civil Authority provision is dismissed, Count III for breach of contract based on the Extra Expense provision is dismissed, and Count IV for breach of contract under the Sue and Labor provision is dismissed. Because there is no coverage under these provisions, the Court need not address whether the Policies' Contamination Exclusions apply. Finally, Counts V through VIII seek declaratory relief based on the same Policy provisions upon which the breach of contract counts are based. Because it is clear from the face of the Second Amended Complaint and the language of the relevant Policy provisions that there is no coverage, the declaratory claims must also be dismissed, as there is no "case of actual controversy." *See* 28 U.S.C. § 2201(a) (stating that "[i]n a case of actual controversy . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration").

Accordingly, it is

**ORDERED** that:

1.   Defendants, Certain Underwriters at Lloyd's, London Subscribing to Policy Numbers ARP-74910 and ARP-75209-20's Motion to Dismiss Plaintiffs' Second Amended

Complaint [DE 41] is **GRANTED.**  Plaintiffs' Second Amended Complaint is **DISMISSED with prejudice.**

    2.    Plaintiffs' Request for Oral Argument on Opposition to Defendants' Motion to Dismiss Second Amended Complaint [DE 49] is **DENIED as moot.**

    3.    All pending motions not otherwise ruled upon are **DENIED as moot.**

    4.    This case is **CLOSED.**

**DONE and ORDERED** in Fort Lauderdale, Florida, this 2nd day of June, 2021.

RODNEY SMITH  
UNITED STATES DISTRICT JUDGE

cc:    All Counsel of Record